# United States Court of Appeals
## For the Eleventh Circuit

No. 06-11116

District Court Docket No.
05-00064-CV-6

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jun 20, 2008

THOMAS K. KAHN
CLERK

GREGORY B. BRYANT,

Plaintiff-Appellant,

versus

GLENN RICH,
R. D. COLLINS,
Lt. RANDY BYRD,
SERGEANT JASON D. BURNS,
OFFICER FNU BYRD, et al.,

Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

No. 06-12290

District Court Docket No.
05-00071-CV-6

ANDREW PRIESTER,

Plaintiff-Appellant,

versus

WARDEN GLENN RICH,
DEPUTY WARDEN R. D. COLLINS,
LIEUTENANT REGINALD T. LANGSTON,
SERGEANT RODNEY MCCLOUD,
SERGEANT BYRD, et al.,

Defendants-Appellees.

------------------------------------------------------------------
Appeals from the United States District Court
for the Southern District of Georgia
------------------------------------------------------------------

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
AUG 26 2008
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:    June 20, 2008
For the Court:   Thomas K. Kahn, Clerk
By:   Harper, Toni

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 06-11116

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 20, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00064- CV-6

GREGORY B. BRYANT,

Plaintiff-Appellant,

versus

GLENN RICH,
R. D. COLLINS,
LT. RANDY BYRD,
SERGEANT JASON D. BURNS,
OFFICER FNU BYRD, et al.,

Defendants-Appellees.

No. 06-12290

D. C. Docket No. 05-00071- CV-6

ANDREW PRIESTER,

Plaintiff-Appellant,

versus

WARDEN GLENN RICH,
DEPUTY WARDEN R. D. COLLINS,
LIEUTENANT REGINALD T. LANGSTON,
SERGEANT RODNEY MCCLOUD,
SERGEANT BYRD, et al.,

                                        Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Georgia

---

**(June 20, 2008)**

**PETITION FOR REHEARING**

Before EDMONDSON, Chief Judge, BIRCH and WILSON, Circuit Judges.

EDMONDSON, Chief Judge:

Andrew Priester and Gregory Bryant have filed a petition for reconsideration en banc.  Treating their petition for en banc reconsideration as a petition for panel rehearing, we withdraw our opinion dated 31 May 2007 and substitute the following opinion in its place:[1]

Two inmates — Andrew Priester ("Priester") and Gregory Bryant ("Bryant") — brought individual suits against prison officials ("Defendants")

---

[1]Pursuant to 11th Cir. R. 35-5, we may treat a petition for rehearing en banc as a petition for rehearing before the original panel.

2

under 42 U.S.C. § 1983 to contest the conditions of their confinement at Rogers

State Prison ("Rogers"). Defendants filed motions to dismiss, which the district

court treated as motions for summary judgment. Because both Priester and Bryant

failed to exhaust their administrative remedies, the district court dismissed

Priester's and Bryant's complaints <u>without prejudice</u>.[2] Priester and Bryant now

appeal.[3] Discovering no reversible error, we affirm.


I. Background


A. Andrew Priester

---

[2] The district court recognized that Defendants' motions were motions to dismiss; and in the light of those motions, the district court ordered dismissals without prejudice. But it is true that the district court also spoke of the motions as having been construed as or converted to summary judgment motions. Given what the district court did — dismiss without prejudice — we understand the "converted" language to mean, in context, that the court would (and did) use the procedures characteristic of dealing with motions for summary judgment in deciding whether or not to grant a dismissal. The district court mainly was telling the parties — to make certain that Priester and Bryant had a meaningful opportunity to oppose Defendants' motions — that matters beyond the pleadings could be submitted and would be considered. In reality, no summary judgment was granted in these cases: The merits of the disputes between the parties were not decided; no rights or liabilities were finally determined.

[3] We earlier consolidated Priester's appeal, case number 06-12290, with Gregory Bryant's appeal, case number 06-11116.

Assuming for the moment that Priester's factual allegations are true, here are the facts. When Priester was incarcerated at Rogers, four prison officials assaulted him on four different occasions between August and December 2003. Despite knowledge of these beatings, both the warden and deputy warden remained deliberately indifferent and failed to prevent Priester's abuse. Priester requested grievance forms from other Rogers officials to report the beatings; but he received none. Priester also contends that prison officials at Rogers generally used force or the threat of force to discourage inmates from filing grievances.

In January 2004, Priester received a transfer from Rogers to Georgia State Prison ("GSP"). During a visit to the GSP infirmary, Priester reported his abuse at Rogers to a psychiatrist and a counselor. He also requested a form to file a grievance about the abuse. The psychiatrist and the counselor responded that his mental health problems had caused him to be delusional; and, as a result, they refused to give him a grievance form to report the beatings. Nothing suggests that Priester made some further attempt to file a grievance about the abuse. He later obtained and submitted a grievance form at GSP for an unrelated incident about lost property.[4]

_____

[4]Priester filed this grievance on 13 October 2005.

4

Priester filed this suit against Defendants under section 1983; he alleges the use of excessive force in violation of federal and state law. Before filing an answer, Defendants moved to dismiss the suit because Priester failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The district court dismissed Priester's complaint without prejudice.

### B. Gregory Bryant

As with Priester, we construe Bryant's factual allegations as true. According to Bryant, he was twice subjected to excessive force by prison officials at Rogers. The warden and deputy warden were deliberately indifferent and failed to prevent his abuse. The first incident occurred on 17 March 2004, when Bryant was beaten and kicked by two officers at the instigation of another officer. Bryant filed a grievance for the beating; but it was denied on 7 April 2004.

Bryant's counselor advised him that he had five business days to appeal the denial of his grievance, which he did on 14 April. But under the prison's standard operating procedures ("SOP") in effect at the time, Bryant actually had only four

business days to file his appeal.[5]  In addition, the form on which Bryant submitted
his appeal stated that the appeal was due within four business days.  The form also
indicated that an untimely appeal might be considered if the reason why it was
untimely was clearly stated.  Bryant's appeal was late and gave no explanation for
its tardiness; it was dismissed as untimely.

On 19 April 2004, Bryant was beaten again — this time in retaliation for
filing his grievance.  Fearing another violent reprisal, he did not file a second
grievance.  Bryant was eventually transferred to Wheeler Correctional Institution;
but he filed no grievances there about his mistreatment at Rogers.

Bryant brought suit under section 1983.  Defendants filed motions to
dismiss, which the district court construed as motions for summary judgment.  The
district court granted the motions and dismissed Bryant's complaint without
prejudice for failure to exhaust administrative remedies under the PLRA.

## II. Discussion

The PLRA requires inmates to exhaust available administrative remedies
before filing a lawsuit: "No action shall be brought with respect to prison

---

[5]Bryant should have submitted his appeal no later than 13 April.

conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This rule applies to all inmate suits alleging excessive force, whether the prisoner alleges an isolated episode of mistreatment or "a prolonged and sustained pattern of harassment and intimidation by corrections officers." See Porter v. Nussle, 122 S. Ct. 983, 991-92 (2002) (internal quotation marks omitted).

Therefore, "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir.2000)). We have no discretion to waive this exhaustion requirement. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

### A. Andrew Priester

That Priester filed no grievance at either Rogers or GSP about the beatings he allegedly suffered is undisputed. Priester contends that he attempted to file grievances at both facilities; but his requests for the pertinent forms were either

unanswered or denied.  He also argues that Rogers officials deterred him from filing grievances through the threat of violence.  Thus, he argues that no grievance procedure was "available" for him to exhaust.

Even assuming — without deciding — that no grievance procedures were available to Priester at Rogers, the record supports that Priester did have grievance procedures available to him when he transferred to GSP.[6]  Yet, he failed to exhaust them.

We recognize that a grievance filed after Priester's transfer to GSP would have been untimely.  But the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause.  Thus, Priester could have exhausted his administrative remedies by filing a grievance at GSP and then by showing good cause for its tardiness.  But, he filed no grievance about the abuse.  See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance,

---

[6]We have said that an administrative remedy is not "available" if it is unknown and unknowable to the inmate. Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007).  Other courts have said that administrative remedies are not available to an inmate if prison officials do not respond to grievances or if they prevent the filing of grievances. See, e.g., Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("We believe that a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)").  We need not decide whether Priester had administrative remedies available to him while he was incarcerated at Rogers because, given the district court's findings, Priester did have remedies available to him at GSP.

he cannot be considered to have exhausted his administrative remedies."); cf. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").

Priester says that GSP officials denied him access to grievance forms. Defendants attempt to rebut this contention by showing, among other things, that Priester successfully obtained and submitted a grievance form at GSP but used it for another matter:  one involving lost property.  Evidence of the property loss grievance, however, does not necessarily refute Priester's allegation that he was denied grievance forms to report physical abuse.  It is possible that Priester was denied access to grievance forms at GSP for the purpose of reporting prison beatings, but not for the purpose of reporting property loss.  We conclude that enough conflicting evidence exists to raise a genuine issue of material fact about whether administrative remedies were available to Priester at GSP.

We decide, however, that the district judge did not err by acting as a factfinder in resolving this factual dispute.[7]  Instances exist — such as those

---

[7]Adopting the magistrate judge's finding that Priester's claim about not having access to grievance forms was not credible, the district court declared "that, irrespective of whether the issue is reached under Rule 12(b)(1), 12(b)(6), or 56, exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues."

9

involving jurisdictional issues[8] — when judges may resolve factual questions.[9]
One such instance is when a judge must decide a motion to dismiss for failure to
exhaust nonjudicial remedies.  See Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th
Cir. 2003) ("In deciding a motion to dismiss for a failure to exhaust nonjudicial
remedies, the court may look beyond the pleadings and decide disputed issues of
fact.").

Even though a failure-to-exhaust defense is non-jurisdictional,[10] it is like a
defense for lack of jurisdiction in one important sense: Exhaustion of
administrative remedies is a "matter[] in abatement, and ordinarily [does] not deal
with the merits."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice
and Procedure § 1360 at 78 n.15 (3d ed. 2004); see also Wyatt, 315 F.3d at 1119

---

[8]A district court judge may make factual findings when resolving purely jurisdictional issues.
Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).  In Bonner v. City of Prichard, 661 F.2d
1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former
Fifth Circuit that were rendered prior to 1 October 1981.

[9]Although the Supreme Court recently announced in Jones v. Bock, 127 S. Ct. 910 (2007), that
failure to exhaust under the PLRA was an affirmative defense, it did so in resolving the question
whether the PLRA required plaintiffs, instead of defendants, to plead specifically that all
administrative remedies had been exhausted.  See id. at 921 ("We conclude that failure to exhaust
is an affirmative defense under the PLRA, and that inmates are not required to specially plead or
demonstrate exhaustion in their complaints.").  Jones decided nothing about the independent
question of whether a judge, as opposed to the jury, may resolve disputed facts about exhaustion.

[10]The Supreme Court has confirmed that exhaustion under the PLRA is not a jurisdictional
prerequisite.  Woodford v. Ngo, 126 S. Ct. 2378, 2392 (2006) (stating that it is "clear that the PLRA
exhaustion requirement is not jurisdictional").

("[W]e have held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement . . . ."); 18 James Wm. Moore, <u>Moore's Federal Practice</u> § 131.30[3][b] at 104 (3rd ed. 2008) (noting that a determination "that [a court] has no subject matter jurisdiction, that personal jurisdiction of defendants or of indispensable parties is lacking, that venue is improper, or that plaintiff has failed to comply with some prerequisite to filing suit, such as exhaustion of administrative remedies . . . is not a determination of the claim, but rather a refusal to hear it").  That exhaustion is nothing more than a precondition to an adjudication on the merits is confirmed by the language of the PLRA itself: "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); <u>cf.</u> <u>Harris v. Garner</u>, 216 F.3d 970, 982 (11th Cir. 2000) (en banc) ("[A]s we have explained "brought" means filed . . . .  Congress chose its words and we will heed them.").

     Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense — as in Priester's case — is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." <u>Ritza v. Int'l Longshoremen's &</u>

Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988); see also Wyatt, 315 F.3d at 1119 (explaining "that '[s]ummary judgment is on the merits,' whereas 'dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits.'" (alteration in original) (citations omitted)).[11]

That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic. "'Federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules.'" Ritza, 837 F.2d at 369 (quoting 5C Wright & Miller, supra, § 1360 at 77). For instance, courts may decide motions to dismiss that are "'closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration.'" Id.; see, e.g., Int'l Ass'n of Entrepreneurs of Am. v. Angoff, 58 F.3d 1266, 1271 (8th Cir. 1995) ("While pre-answer motions are ostensibly enumerated in Fed. R. Civ. P. 12(b), district courts have the

---

[11]We decide the case before us: one where dismissal was without prejudice and where neither party has evidenced that administrative remedies at GSP are absolutely time barred or otherwise clearly infeasible. We do not mean to say today that a failure to exhaust can never correctly result in a dismissal with prejudice. See Johnson, 418 F.3d at 1157 (stating that without "the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies" (internal quotation marks omitted)); see also Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004) (indicating that dismissal with prejudice would be appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust").

discretion to recognize additional pre-answer motions, including motions to stay

cases within federal jurisdiction when a parallel state action is pending."). We

regard exhaustion of administrative remedies as a matter of judicial administration.

The Supreme Court has described Congress's purpose in enacting the PLRA's

exhaustion requirement in terms of managing prisoner litigation:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity
>
> and improve the quality of prisoner suits; to this purpose, Congress
>
> afforded corrections officials time and opportunity to address
>
> complaints internally before allowing the initiation of a federal case.
>
> In some instances, corrective action taken in response to an inmate's
>
> grievance might improve prison administration and satisfy the inmate,
>
> thereby obviating the need for litigation. In other instances, the
>
> internal review might filter out some frivolous claims. And for cases
>
> ultimately brought to court, adjudication could be facilitated by an
>
> administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 122 S. Ct. 983, 988 (2002) (internal quotation marks and

citations omitted). Accordingly, exhaustion should be decided on a Rule 12(b)

motion to dismiss; and in fact, this Circuit has previously done so. See, e.g.,

13

Johnson, 418 F.3d at 1153-54 (remanding to the district court with instructions to dismiss plaintiff's complaint for failure to exhaust administrative remedies).

When a court "treats [a] motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion." 5C Wright & Miller, supra, § 1360 at 91. For judges to resolve factual disputes where the motion to dismiss is not an adjudication on the merits is not uncommon. For instance, it is well-established that a judge may make factual findings about subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss. Williamson, 645 F.2d at 413. Likewise, a judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process. See, e.g., Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002) (personal jurisdiction); Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1247 (11th Cir. 2000) (personal jurisdiction); Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139-40 (9th Cir. 2004) (improper venue); 5B Wright & Miller, supra, § 1353 at 340, 345 (stating that "the defense of improper service of process involves a matter in abatement and does not go to the merits of the action" and that any "factual question raised by the affidavits or other evidence presented on a Rule 12(b)(4) or a Rule 12(b)(5) motion should be determined by the district court"). Where

14

exhaustion — like jurisdiction, venue, and service of process — is treated as a

matter in abatement and not an adjudication on the merits,[12] it is proper for a

judge to consider facts outside of the pleadings and to resolve factual disputes so

long as the factual disputes do not decide the merits[13] and the parties have

sufficient opportunity to develop a record.[14]  See Ritza, 837 F.2d at 369 ("[W]here

a factual issue arises in connection with a jurisdictional or related type of motion,

the general view is that there is no right of jury trial as to that issue . . . and that

the court has a broad discretion as to the method to be used in resolving the

factual dispute." (emphasis added) (second alteration in original) (internal

quotation marks omitted)); Wyatt, 315 F.3d at 1119-20 ("In deciding a motion to

dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond

the pleadings and decide disputed issues of fact.").  Requiring jury trials to

---

[12]It bears noting that where, as in this case, exhaustion is not adjudicated as part of the merits, it is unlike a defense under Rule 12(b)(6) for failure to state a claim, which is generally decided on the merits.  See NAACP v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990) (stating that "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'").

[13]Cf. Lawrence v. Dunbar, 919 F.2d 1525, 1530 (11th Cir. 1990) (stating that a district court should apply a Rule 56 summary judgment standard "when the jurisdictional basis of a claim is intertwined with an element of the cause of action because, in those cases, the attack on jurisdiction is also an indirect attack on the merits").

[14]See Wyatt, 315 F.3d at 1120 n.14 ("[I]f the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust — a procedure closely analogous to summary judgment — then the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record.").

resolve factual disputes over the preliminary issue of exhaustion would be a novel

innovation for a matter in abatement[15] and would unnecessarily undermine

Congress's intent in enacting the PLRA's exhaustion requirement:  that is, to

"reduce the quantity and improve the quality of prisoner suits."  Porter, 122 S. Ct.

at 988.

Turning to this case, we note that Priester did not say in his affidavit to the

district court that his failure to file a grievance at GSP was due to his fear of

violent reprisal at GSP.  To the extent that Priester suggests on appeal that he

feared beatings at GSP, we will not consider that new argument.  See Access

Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).  The

facts about whether Priester failed to exhaust his administrative remedies at GSP

do not bear on the merits of his claim that he was subjected to violent abuse at

Rogers.  Also, because the district court treated Defendants' motions to dismiss

like motions for summary judgment, Priester was given an opportunity to develop

a record by obtaining affidavits and attaching them to his filings; and Priester did

---

[15]What we decide today is no innovation.  We are aware of no precedent in this Circuit allowing
the question of exhaustion under the PLRA to go to a jury.  Nor are we aware of a published
precedent in this Circuit in which we decided that a judge had no authority to decide disputed facts
about exhaustion, as a precondition to suit under the PLRA.  Cases decided on the basis of no
disputed facts about exhaustion are materially different from this case, presenting different questions
for decision.

so.[16]  We conclude, therefore, that the district judge did not err by acting as the

factfinder on whether Priester had access to grievance forms at GSP to report his

abuse at Rogers.

We review the district court's findings of fact for clear error.  Cf.

Lawrence, 919 F.2d at 1530 (stating that, where the jurisdictional facts are not

intertwined with the merits, the "standard of reviewing a district court's findings

of jurisdictional facts is the clearly erroneous standard").  "For a factual finding to

be clearly erroneous, this court, after reviewing all of the evidence, must be left

with the definite and firm conviction that a mistake has been committed."

Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1275 (11th Cir.

2006) (internal quotation marks omitted).  The district court found that Priester's

allegation that he was denied access to grievance forms at GSP was not credible,

especially given unrebutted evidence that Priester successfully filed a grievance

---

[16]Priester introduced evidence outside of the pleadings in his response to Defendants' motions
to dismiss.  Motions to dismiss not enumerated under Rule 12(b) are governed by Rule 43(c), which
permits courts to hear evidence outside of the record on affidavits submitted by the parties.  See Fed.
R. Civ. P. 43(c); Ritza, 837 F.2d at 369 (citing 5C Wright & Miller, supra, § 1360 at 91).  Priester
did not request an evidentiary hearing on the issue of exhaustion, nor has he raised the district court's
failure to hold an evidentiary hearing as an error in this appeal.  At least in the absence of a timely
request for an evidentiary hearing and where the resulting order is to be a dismissal without
prejudice, a district court may resolve material questions of fact on submitted papers for the PLRA's
exhaustion of remedies requirement.  Cf. Sunseri v. Macro Cellular Partners, 412 F.3d 1247, 1251
(11th Cir. 2005) (concluding that "it is not an abuse of discretion to decide a motion to dismiss for
want of jurisdiction on the basis of affidavits and other documents when neither party makes a timely
and unequivocal request for an evidentiary hearing").

at GSP, although it was one for property loss.[17]  That the district court drew this inference is not unreasonable, even if cause to disagree also exists.  See Anderson v. City of Bessemer City, 105 S. Ct. 1504, 1511 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").  Accordingly, we cannot say that the district court committed clear error in finding that Priester had access to grievance forms at GSP by which he could have reported the prison abuse at Rogers.  We accept that Priester failed to exhaust his administrative remedies in the light of the PLRA.

---

[17]The district judge wrote that he "agreed" with the magistrate judge's credibility findings.  The magistrate judge also had written these things:

> Of course, [Priester] avers that unidentified staff at GSP continued to deny him access to grievance forms.  This farfetched contention simply cannot be taken at face value.  Not infrequently, this Court has considered cases involv[ing] the alleged use of excessive force at GSP; even in these cases, GSP officials have not prevented prisoner plaintiffs from fully exhausting the administrative process.  See, e.g., Palmer v. Smith, CV 604-075 (S.D. Ga. June 29, 2004).  [Priester's] suggestion that prison officials at GSP denied him access to grievance forms for over two years in order to protect colleagues at Rogers is sorely lacking in credibility.  The believability of the averment is further eroded by the fact that other inmates at Rogers who have recently brought excessive force claims against Defendants did file grievances regarding their claims.  See, e.g., Hooks v. Rich, CV 605-065 (S.D. Ga. July 13, 2005).

By the way, Priester has not objected to the district court's consideration of the filings and its own records in other inmate cases.

18

## B. Gregory Bryant[18]

Bryant raises two exhaustion issues on appeal. First, he argues that his appeal of the warden's denial of his first grievance – although untimely – satisfied the PLRA's exhaustion requirement. We disagree. To exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process." Johnson, 418 F.3d at 1158 (internal quotation marks omitted). If their initial grievance is denied, prisoners must then file a timely appeal. See id. (stating in dicta that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require" (internal quotation marks omitted) (alteration in original)); cf. Harper, 179 F.3d at 1312 (concluding that a prisoner who declined to appeal an untimely grievance failed to exhaust his administrative remedies).

---

[18]Although Bryant filed his notice of appeal before the district court entered final judgment for all Defendants, his notice of appeal was not premature. "[W]here final judgment has been entered as to all defendants who have been served with process and only unserved defendants remain, the district court's order may be considered final under 28 U.S.C. § 1291 for purposes of perfecting an appeal." Insinga v. LaBella, 817 F.2d 1469, 1469-70 (11th Cir. 1987). Here, the district court granted partial summary judgment on 23 January 2006 to all Defendants who had been served with process. On 3 February, Bryant moved to dismiss the remaining Defendants, all of whom remained unserved. Because these Defendants had not yet been served, the district court's grant of partial summary judgment to all served Defendants was a final appealable order. As such, Bryant's notice of appeal filed on 9 February was not untimely.

Although Bryant properly filed a grievance reporting his first allegation of abuse, he nevertheless failed to file a timely appeal under the SOP in effect at the time. Bryant contends, however, that he was merely following his counselor's instructions in submitting his appeal within five business days instead of four. Bryant also contends that his appeal was delayed because he received no appeal form until the day before he filed his appeal. Even if we were to accept that Bryant's appeal was untimely because his counselor was mistaken about the time limits, we cannot say that Bryant successfully exhausted his administrative remedies. The prison's administrative appeals process permitted the time limits to be waived for good cause; yet at no time has Bryant sought a waiver. Because Bryant did not pursue a good cause waiver after his appeal was dismissed as untimely, he did not fully exhaust the administrative remedies available to him. See Johnson, 418 F.3d at 1158-59 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim." (emphasis added)).

Second, Bryant argues that he failed to report the second incident of prison abuse, which occurred in retaliation for filing his first grievance, because he feared additional violent reprisals by Rogers officials. This argument is unavailing. Like Priester, Bryant was later transferred to another prison where

the threat of violence was removed.[19]  There, he could have filed an out-of-time

grievance and then shown good cause for its untimeliness.  Because he did not,

Bryant failed to exhaust an administrative remedy that was available to him.  In

sum, we conclude that Bryant — like Priester — did not exhaust all

administrative remedies as required by the PLRA.


## III. Conclusion


Because neither Priester nor Bryant exhausted all of their administrative

remedies before filing their suits, we affirm the district court's decisions

dismissing their claims without prejudice.

Affirmed.

---

[19]Bryant points to no evidence in the record that he was threatened with retaliation for filing a
grievance at the new prison.

WILSON, Circuit Judge, concurring in part, dissenting in part:

I concur in the majority's opinion with respect to Gregory Bryant. I do not think, however, that the majority's opinion in Part II-A can be reconciled with the recent Supreme Court decision in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

In *Jones*, the Chief Justice, writing for a unanimous Supreme Court, overturned several judicially-created procedural rules adopted by courts to implement the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Several circuits had begun treating exhaustion under the PLRA as a special pleading requirement that the prisoner must sufficiently demonstrate in his complaint. *See Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) (per curiam). *Jones* expressly overturned this practice, stressing that the courts should not have departed from their "usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones*, 549 U.S. at —, 127 S. Ct. at 919-920. It noted that "when Congress mean[s] to depart from the usual procedural requirements, it [does] so expressly," *id.* at 921, and when the PLRA is silent on a procedural issue "the usual practice should be followed," *id.* at 919. The Court

22

made it clear that crafting and imposing procedural rules that are not required by the PLRA "exceeds the proper limits on the judicial role." *Id.* at 914.

Failure to exhaust under the PLRA is an affirmative defense the defendant must plead and prove. *Id.* at 915. It is subject to the usual procedural practice. *Id.* at 919.

Our usual practice is to consider affirmative defenses, such as failure to exhaust administrative remedies or statute of limitations,[1] on summary judgment pursuant to Federal Rule of Civil Procedure 56.[2] *See, e.g., Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir. 2002) (per curiam) (statute of limitations); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828-29 (11th Cir. 1999) (same); *Goebert v. Lee County*, 510 F.3d 1312, 1322 (11th Cir. 2007) (failure to exhaust under the PLRA); *Miller v. Tanner*, 196 F.3d 1190, 1192 n.5 (11th Cir. 1999) (same); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 846 (11th Cir. 2000) (failure to exhaust under Title VII);

---

[1] In *Jones*, the Court analogized failure to exhaust to the affirmative defense of statute of limitations. 127 S. Ct. at 920-21.

[2] If, however, a plaintiff fails to make sufficient allegations in his complaint such that an affirmative defense appears on its face, his complaint may be subject to dismissal under Rule 12(b)(6). *Jones*, 127 S. Ct. at 921; *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) ("A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim."). On the other hand, once "matters outside the pleadings are presented," as they were in this case, a motion for dismissal pursuant to 12(b)(6) is no longer appropriate, and "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

*accord Ruggiero v. County of Orange*, 467 F.3d 170, 173 (2d Cir. 2006) (failure to exhaust under the PLRA).

A district court should not grant summary judgment where genuine issues of material fact exist about an affirmative defense. *See* Fed. R. Civ. P. 56(c); *see also Mason v. Bridger*, 261 F. App'x 225, 227-28 (11th Cir. 2008) (unpublished) (failure to exhaust under the PLRA); *Lyons v. Serrano*, 205 F. App'x 719, 722 (11th Cir. 2006) (unpublished) (same); *Pri-Har v. Corrs. Corp.*, 154 F. App'x 886, 887 (11th Cir. 2005) (unpublished) (same). This is our usual procedural practice with respect to affirmative defenses, whether it be the defense of statute of limitations, *see, e.g., Morton's Mkt.*, 198 F.3d at 833 (reversing the district court's grant of summary judgment where genuine issue of material fact existed as to whether statute of limitations was tolled), or failure to exhaust under Title VII, *see, e.g., Stewart*, 232 F.3d at 846 (reversing the district court's grant of summary judgment for failure to exhaust where genuine issue of material fact existed as to whether the exhaustion was timely).

The majority departs from our usual procedural practice by directing district courts to treat failure to exhaust not as an affirmative defense, but to

24

consider it on a "motion to dismiss" not enumerated in Rule 12(b).[3]  More strikingly, rather than submitting genuine issues of material fact to the jury, the majority compels district courts to decide these factual issues.  *Cf.* Fed. R. Civ. P. 56(c).

As support for its position, the majority cites Ninth Circuit precedent, including *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), which treats failure to exhaust under the PLRA as a matter in abatement, subject to an unenumerated Rule 12(b) motion to dismiss.  *Wyatt* was decided, however, in light of long-standing Ninth Circuit precedent which treats exhaustion in other contexts under this particular procedural framework.  *See Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam) (failure to exhaust contractual grievance procedures); *Stauffer Chem. Co. v. Food & Drug Admin.*, 670 F.2d 106, 108 (9th Cir. 1982) (failure to exhaust administrative remedies); *Studio Elec. Technicians Local 728 v. Int'l Photographers of the Motion Picture Indus., Local 659*, 598 F.2d 551, 552 n. 2 (9th Cir. 1979) (failure

---

[3] Although exhaustion under the PLRA is an affirmative defense, the majority regards it as "a matter of judicial administration," likening it to lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, or ineffective service of process. Each of the latter defenses, however, are enumerated in Rule 12(b), Fed. R. Civ. Pro. 12(b)(1)-(4), while failure to exhaust is not. In the context of failure to exhaust under the PLRA, the Supreme Court has indicated that deviations from the usual procedural practice "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Jones*, 127 S. Ct. at 922 (internal quotation marks omitted).

to exhaust intra-union remedies). Thus, the *Wyatt* court did not depart from its usual procedural practice when considering exhaustion under the PLRA.[4]

This Court, on the other hand, has consistently treated exhaustion in other contexts on summary judgment, determining whether "there is no genuine issue of material fact." *Counts v. Am. Gen. Life and Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (failure to exhaust administrative remedies under ERISA); *Turner v. Am. Fed'n of Teachers Local 1565*, 138 F.3d 878, 881-82 (11th Cir. 1998) (failure to exhaust contractual remedies under the LMRA); *Stewart*, 232 F.3d at 846 (failure to exhaust administrative remedies under Title VII). The majority would subject exhaustion under the PLRA to an entirely different procedural framework than the one this Court applies to exhaustion in other contexts.

---

[4] It is also worth noting that several district courts have expressed concern that *Wyatt* is irreconcilable with *Jones*. *See Chatman v. Johnson*, No. CIV S-06-0578 MCE EFB P, 2007 WL 2023544, at *3 (E.D. Cal. July 11, 2007) ("While the Ninth Circuit [in *Wyatt*] has stated that Rule 12(b) is the proper mechanism for resolving questions [of exhaustion under the PLRA] the reason underlying that decision has been undermined. [*Wyatt*] found that failure to exhaust was a matter in abatement which should be raised in a motion made under 'unenumerated Rule 12(b).' However, the United States Supreme Court [in *Jones*] recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. Federal courts appropriately consider affirmative defenses on summary judgment." (citations and footnote omitted)); *Gregory v. Adams*, No. CIV S-05-1393 FCD EFB P, 2007 WL 2481769, at *3 (E.D. Cal. Aug. 29, 2007) (same); *Maraglia v. Maloney*, 499 F. Supp. 2d 93, 94-9 (D. Mass. 2007); *Lunney v. Brureton*, No. 04 Civ. 2438(LAK)(GWG), 2007 WL 1544629, at *10 n.4 (S.D.N.Y. May 29, 2007).

In light of the PLRA and Title VII's purposes, I see no reason to treat exhaustion under each statute differently. Congress enacted the PLRA, in part, "to reduce the quantity and improve the quality of prisoner suits" and to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002). Indeed, "in some instances, corrective action taken in response to an inmate's grievance might . . . obviat[e] the need for litigation." *Id.* at 525. Likewise, in order to promote cooperation and voluntary compliance with Title VII, as opposed to litigation, Congress created an administrative framework to encourage parties to "settle disputes through conference, conciliation, and persuasion" before allowing the aggrieved party to file a lawsuit. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1011, 1017, 39 L. Ed. 2d 147 (1974). This Court treats failure to exhaust under Title VII on summary judgment, whereby a court "must avoid weighing conflicting evidence or making credibility determinations." *Stewart*, 232 F.3d at 848 (reversing a district court's grant of summary judgment for failure to exhaust under Title VII due the existence of a genuine issue of material fact as to whether exhaustion was timely). I see no compelling reason to depart from this practice when dealing with failure to exhaust under the PLRA.

Furthermore, I am unaware of, and majority does not point out, any precedent wherein this Court has treated exhaustion, or any other affirmative defense, as a "matter in abatement," directing a district court to decide genuine issues of material fact.  Accordingly, by departing from our usual procedural practice with respect to exhaustion and other affirmative defenses, and treating exhaustion under the PLRA under this novel procedural framework, the majority adopts an approach that is in tension with *Jones*.  *See* 549 U.S. at —, 127 S. Ct. at 919 (stressing that when the PLRA is silent on a procedural issue "the usual practice should be followed").

Lastly, treating exhaustion on summary judgment does not undermine Congress's intent in enacting the PLRA.  A prisoner cannot defeat summary judgment by relying on sham affidavits, bare and self-serving allegations, or other evidence that is incredible as a matter of law.  He must raise more than a mere scintilla of evidence in support of his position: in order to defeat summary judgment, there must be evidence on which the jury could *reasonably* find for the prisoner.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)).  In the vast majority of cases where the defendant raises exhaustion, a prisoner's failure to exhaust will be clear.  In these cases, summary

28

judgment should be granted.  In some cases, however, where enough evidence exists such that a jury *could* reasonably find that the prisoner has exhausted his available remedies, the court should abstain from weighing the evidence and deny summary judgment.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:

Deputy Clerk
Atlanta, Georgia

Scott L. Poff
Clerk, U.S. District Court
125 BULL ST RM 306
SAVANNAH  GA  31401-3762

August 26, 2008

**Appeal Number: 06-11116-GG**
Case Style: Gregory B. Bryant v. Glenn Rich
District Court Number:  05-00064 CV-6

TO:   Scott L. Poff

CC:   McNeill Stokes

CC:   Andrea S. Hirsch

CC:   Devon Orland

CC:   Gary L. Seacrest

CC:   Annarita McGovern Busbee

CC:   Michelle Katherine McDonald

CC:   William Clinton Rhodes

CC:   David R. Smith

CC:   Matthew Peter Stone

CC:   David C. Will

CC:   Frank P. Harris

CC:   Hon. James E. Graham

CC:   Administrative File

Scott L. Poff
Clerk, U.S. District Court
125 BULL ST RM 306
SAVANNAH  GA  31401-3762

---

August 26, 2008

**Appeal Number: 06-12290-GG**
Case Style: Andrew Priester v. Warden Glenn Rich
District Court Number:  05-00071 CV-6

TO:   Scott L. Poff

CC:   McNeill Stokes

CC:   Devon Orland

CC:   David R. Smith

CC:   Frank P. Harris

CC:   Andrea S. Hirsch

CC:   Michelle J. Hirsch

CC:   Matthew Peter Stone

CC:   Hon. W. Leon Barfield

CC:   Administrative File